# FILED

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TENN.

JAN 1 3 2011

DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

RECEIVED
IN CLERK'S OFFICE

JAN 1 3 2011

U.S. DISTRICT COURT
MID. DIST. TENN.

RECEIVED
CLERK'S OFFICE

JAN 1 3 2011

U.S. DISTRICT COURT
MID. DIST. TENN.

JAMES V. KIMBRO,    CATHEY P. KIMBRO  and )
JEFFREY G. KIMBRO. )

Plaintiffs )

V. )

3   11   0049

* THE ASSOCIATION IN FACT COMPRISED OF THE )
   DEFENDANTS LISTED BEBLOW, UNDER THE )
   STATUTE 18 U.S.C., section 1961(4). )
* Officer Eric Toms, individually, )
   and in his official capacity )
* Officer J. Smith individually, )
   and in his official capacity )
* Officer Alley Evola individually, )
   and in his/her official capacity )
* Officer Bob Kupczyk, individually, )
   and in his official capacity )
* Officer Marcus Allbright, individually, )
   and in his official capacity, )
* John Does )
* City of Franklin Police Department )
* City of Spring Hill Police Department )
* Williamson County Jail )
* Williamson County Sheriff's Department )
* Mr. Derrick Smith )
* Ms. Lisa M. Carson )
* Mr. Mark Nolan )
* Ms. Kathryn W. Olita )
* Ms. Kristen Berexa )

DEFENDANTS )

COMPLAINT TO RECOVER ECONOMIC LOSSES SUSTAINED BY THE PLAINTIFFS BY REASON OF
THE DEFENDANT'S PATTERN OF RACKETEERING.

# COMPLAINT

## JURISDICTION AND VENUE

1. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, relating to federal question jurisdiction and Rule 23 of the Federal Rules of Civil Procedure. The subject matter of this action is 28 U.S.C. § 1343; 42 U.S.C. § 1985; **and** 18 U.S.C. § 2 Guilt of RICO Offense by Aiding and Abetting; 18 U.S.C. §1962(b) Defendant's Acquisition or Control of an Interest in a RICO Enterprise; 18 U.S.C. §1962(c) RICO - Conducting or Participating in the Conduct of the Affairs of an Enterprise Through A Pattern Of Racketeering Activity; 18 U.S.C. §1962(d) RICO - Conspiracy; Elements of the Offense RICO ; and 18 U.S.C.§ 1963 Criminal Forfeiture of Property.

2. Venue is proper in the United States District Court, Middle District of Tennessee, pursuant to 28 U.S.C. § 1391 and Section 1965 of RICO, 18 U.S.C. § 1965.

## PARTIES

3. Plaintiff James Vernon Kimbro is a 57 Year old white male and a resident of Williamson County, at 1529 Macaw Court, Brentwood, TN 37027.

4. Plaintiff Cathey P. Kimbro is a 57 year old white female and a resident of Williamson County, at 1529 Macaw Ct., Brentwood, TN 37027.

5. Plaintiff Jeffrey G. Kimbro is a 28 year old white male and a resident of Williamson County, at 1529 Macaw Ct., Brentwood, TN 37027.

6. Defendant Officer Eric Toms 512 Old Hickory Blvd., Nashville, TN 37209 Police Officer, who was a police officer employed by the City of Spring Hill at 01/17/2007 . At all times relevant to this action, Defendant Toms acted under color of law.

7. Defendant Officer J. Smith, City of Spring Hill, P.O. Box 789, 199 Town Center Parkway, Spring Hill, TN 37174, Police Officer, who was a police officer employed by the City of Spring

Hill at 01/17/2007 and it is unknown if he remains as such. At all times relevant to this action, Defendant Smith acted under color of law.

8. Defendant Officer Alley Evola, City of Franklin, Police Department, 109 3rd Avenue South, Franklin, TN 37064, <u>Police Officer</u>, who was a police officer employed by the City of Franklin at 01/17/2007 and it is unknown if he/she remains as such. At all times relevant to this action, Defendant Evola acted under color of law.

9. Defendant Officer Bob Kupczyk, City of Franklin Police Department, 109 3rd Avenue South, Franklin, TN 37064, <u>Police Officer</u>, who was a police officer employed by the City of Franklin at 01/17/2007 and it is unknown if he/she remains as such. At all times relevant to this action, Defendant Evola acted under color of law.

10. Defendant Sergeant Marcus Allbright, City of Spring Hill, P.O. Box 789, 199 Town Center Parkway, Spring Hill, TN 37174, <u>Police Officer</u>, who was a police officer employed by the City of Spring Hill at 01/17/2007 and it is unknown if he remains as such. At all times relevant to this action, Defendant Allbright acted under color of law.

11. Defendants John Does, were, at all times relevant hereto.

12. Defendant Franklin Police Department is a department of the City of Franklin, TN located at 900 Columbia Avenue, Franklin, TN 37064

13. Defendant Spring Hill Police Department is a department of the City of Springhill, TN, located at P.O. Box 789 199 Town Center Parkway Spring Hill, TN 37174.

14. Defendant Williamson County Jail is a department of the Williamson County Sheriff's Department located at 408 Century Court, Franklin, TN 37064

15. Defendant Williamson County Sheriff's Department is a department of the Williamson County Government under the supervision of the Sheriff located at 408 Century Court, Franklin, TN 37064

16. Mr. Derrick Smith is an Assistant Attorney General in the 21st Judicial District, 421 Main Street, P.O. Box 937, Franklin, TN., 37065

17. Defendant Lisa M. Carson is an attorney with Buerger, Moseley & Carson, PLC. 306 Public Square, Franklin, TN 37064. She represented Williamson County.

18. Defendant Mark Nolan is an attorney with Batson, Nolan, Pearson, Miller & Joiner, 121 South Third Street., Clarksville, TN 37040. He represented the City of Spring Hill.

19. Defendant Kathryn W. Olita is an attorney with Batson, Nolan, Pearson, Miller & Joiner, 121 South Third Street., Clarksville, TN 37040. She represented the City of Spring Hill.

20. Defendant Ms. Kristin Ellis Berexa, is an attorney with FARRAR & BATES, LLP, 2117th Avenue North, Suite 500, Nashville, TN 37219. She represented the City of Franklin.

Defendants have knowingly engaged in a deliberate campaign of widespread fraud and deception intended to cover up repeated acts of excessive force, violations of the civil rights of James V. Kimbro; Cathey P. Kimbro; and Jeffrey G. Kimbro; assault and battery, intentional wrongs and malicious prosecution, prosecutorial misconduct, violations of the Hobbs Act extortion of guns valued at $15,000-$25,000, and misuse of the power of the State, in his official capacity, by the Assistant District Prosecution Attorney to persecute and prosecute the Kimbros in a malicious prosecution, to deprive them of their civil rights, to use it to protect "dirty" cops and Government entities that failed in their duty to train, supervise, and control their police forces. The Assistant District Attorney conspired with the City Departments and their representative attorneys in the violation of Mr. Kimbro's Constitutional Rights and the dismissal of his lawsuit claiming same, (3:08-CV-00079). The District Attorney failed, as an omission , to complete his duties as required by TCA § 8-7-103, but did in commission illegally act as a shill for Williamson County and used his office to protect "dirty cops" and cover-up constitutional rights violations in a conspiracy with the

Defendant attorneys and their clients. This Prosecutor used the threat of an exaggerated sentence for Jeffrey G. Kimbro to deprive Mr. James V. Kimbro of his civil rights and caused him to be extorted to dismissal of his civil suit against not only the "dirty cops" and their employers (Defendants City of Franklin, City of Spring Hill, City of Spring Hill Police Department, and City of Franklin Police Department) but also against the Williamson County Jail and it's employees who nearly killed Mr. James V. Kimbro by denying him medication causing and not recognizing a psychotic suicidal state, by their lack of even the minimally required training. This part of the civil suit had nothing to do with the part of the suit against the "dirty cops" and only the Prosecutor's wish to enrich his employer and cultivate continued progression of his legal career could have driven his insistence that the entire suit be dismissed. Defendants, operating as an Association in Fact have formed an enterprise, and engaged in the illegal acts and practices alleged in this Complaint and are, therefore, jointly and severally liable for such acts and practices

## STATEMENT OF FACTS

Paragraphs 1-19 are respectfully alleged and reincorporated throughout this entire Complaint. The following narrative is not complete, nor does it purport to contain all the instances of lawbreaking by the conspirators or false testimony recorded by them.

20. On 1/17/2007 Officer Eric Toms, and Officer John Smith of the Spring Hill Police Department, plus Officer Alley Evola and Officer Bob Kupczyk of the Franklin Police Department arrived at 2795 New Port Royal Road, Thompsons Station, TN 37027, the home of James v., Cathey P. and Jeffrey G. Kimbro to serve a misdemeanor warrant for Telephone Harassment on James V. Kimbro. Jeffrey G. Kimbro and James V. Kimbro were armed when Cathey P. Kimbro opened the front door and discovered Police Officers were there. There had been no

Case 3:11-cv-00049 Document 1 Filed 01/13/11 Page 5 of 22 PageID #: 5

announcement that these were Police, just a continued pounding on the door late at night, and

the house was completely dark as the Kimbros had retired for the evening and were in bed.

There was no announcement that there were Police Officers at the door as they pounded upon

it, counter to Officer Evola's claims in her Police Report. We were prepared to stop a home

invasion. The pistols were never raised at the officers and they were promptly <u>put away</u> when

it was apparent Police Officers were present. This is corroborated by the Police Officer's

themselves and by the fact that no charges were filed for a threatening display of firearms by

the Officers for this specific event. Neither Jeffrey G. Kimbro nor James V. Kimbro were

charged with any crime as they had proceeded legally with their weapons and put them away.

Defendants in prior Interrogatories do not seem to recognize English nor understand that we

are only referring to the incident at the front door at the commencement of the night's

occurrence. To help them, which the officer's accounts do not, this is a chronological account.

21. Officer Evola lied in her Police Report stating that the gun of Jeffrey Kimbro was rising up,

attempting to create a crime where none existed and/or joining the other officers in a

continued pattern of lies in their official reports attempting to demonize the Kimbros and

establish the false premise that the Kimbros were somehow the aggressors in this situation.

The other officers counter this statement and state that the gun was not rising and never was

pointed at any officer. James V. Kimbro put his weapon on the den fireplace mantle and Jeffrey

G. Kimbro returned his weapon to his upstairs room and placed it in his nightstand, where it is

always kept. This room is over the two car garage and is entered by climbing 14 steps from a

downstairs hallway. It would be considered the 2nd floor.

22. During this time Officer Eric Toms apparently contacted his superior because weapons were

present and Sergeant Marcus Allbright of the Spring Hill Police Department quickly arrived. He,

as the senior officer present, should have assumed command of the situation.

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 6 of 22 PageID #: 6

23. As Cathey P. Kimbro stood at the door, James V Kimbro left the room to contact an attorney, with the officer's complete knowledge and agreement, per their own police reports.

24. Cathey Kimbro was describing at the door all the illnesses that James V. Kimbro had, and his required medications. She was trying to stop these officers from just carrying Mr. Kimbro off into the night with no medical considerations. It is a pattern within the Williamson County Judicial system to ignore inmate's and arrestee's medical needs. Judge Denise Andre later denied Mr. Kimbro any special medical consideration and stated "The jail can deal with Mr. Kimbro's medical condition in Preliminary Court. She has no idea of how the jail operates, it's medical facilities or it's numerous shortcomings. Wilson County operates in a similar manner and was the subject of a U.S. Department of Justice, Civil Rights Divison in 2007. We can confirm that the Williamson County Jail has violated the same Constitutional requirements that Wilson County did. Mr. Kimbro had had Diabetes for 18 years at this time, with various diabetic complications, and had been diagnosed with Coronary Artery Disease eight years prior having had a triple by-pass operation and a stent inserted into a blocked artery only eight weeks prior to this time, and had been diagnosed in September 2002 with Dementia, which only later was found to be vascular dementia.

25. During this time Officer Eric Toms ordered Mrs. Kimbro, who was in her pajamas, to step outside on the porch in 20 degree weather in mid-January, a ridiculous and outrageous command. When she did not, **Toms** grabbed her without warning physically and pulled her into the door frame, injuring her in the process. For this she was charged with resisting arrest and obstruction of justice. His assault was claimed to be her resistance. Apparently violence and manhandling people without police order is standard procedure in the Spring Hill Police Department.

Case 3:11-cv-00049 Document 1 Filed 01/13/11 Page 7 of 22 PageID #: 7

26. At or about this time the first conspiracy was hatched. As the frustrated officers lost patience with Mrs. Kimbro, they met in the front yard and decided to attack Mr. Kimbro whenever he approached the front door (PredicateAct 1). On belief, they decided to take this action without consideration of the legality of the actions they would take. Their reckless disregard for the law was illustrated by placing an officer with four month's experience in the lead position, allowing him to make split second legal and constitutional decisions. This was regardless of the fact that Mr. Kimbro had not barred the Police in any way, had been compliant, was acting with full police knowledge that he left to dress and to call an attorney, and his wife had completely described his medical conditions. They did not care about Mr. Kimbro's health nor about violating his rights or the possibility that their actions could cause physical harm or death. Their plan to physically assault Mr. Kimbro is evident in that the largest most physical Officer, Eric Toms, was stationed just inside the door of the Kimbro residence. There is no other plausible explanation for an officer with four months of experience becoming the lead officer. Officer Toms was a former MP in the Armed Forces, apparently learning his "skills" from dealing with rowdy 18-20 year old physically fit service members. He was in a position to continue to practice his experience of law enforcement upon the civilian population.

27. There are statements by Sergeant Marcus Allbright concerning the officer's location at this point, he states in his Police Report "Upon allowing Jeffery to read the warrant I was able to make my way into the front doorway just inside of the residence as the other Officers followed." The other Officers have lied repeatedly about this, stating that they were not in the house when James V. Kimbro reentered the room. Sergeant Allbright correctly placed the officers where James V. Kimbro said they were at this point, in his complaint in Case No. 3:08-CV-00079. When he and Jeffery G. Kimbro left the room, the Officers were outside.

**THERE IS NO WAY THAT JEFFREY G. KIMBRO WOULD KNOW THAT THE POLICE HAD ENTERED THE HOME, nor did James V. Kimbro, as they were both in a back room of the home.**

28. Despite zero resistance from James Kimbro, Officer Eric Toms physically attacked Mr. Kimbro, as planned by the Officers in the front yard. Here is Officer Toms' Preliminary trial testimony:

>     A.     As soon as he went to the ground he
>     started hollering that, Sir.
>
>     Q.     Did he attempt to make you aware of any
>     type of medical condition?
>
>     A.     He  --  I think he said something about his
>     shoulder,  but he was fighting me,   so I had to do
>     what I had to do so ---

The key to his testimony, conflicting with everything he stated in his Police Report, was his acknowledgement that James V. Kimbro was screaming about his medical condition but Toms completely ignored the pain he was inflicting upon a disabled 53 year old man, and **"did what he had to do"**.  Officer Toms testified over and over that Mr. Kimbro was shouting "shoot them" "shoot them", which Mr. Kimbro admits he said, though hardly in a shout as he was being deprived of air by that time and was face down on the floor behind a love seat.  Mr. Kimbro believed he was being killed, as his medical conditions were ignored and he was assaulted by this same inexperienced Officer that earlier assaulted his wife.  Toms' testimony above proves his actions.  James Kimbro did not start hollering that as soon as he went to the ground or when Officer Toms first physically assaulted him.  As Toms reluctantly admits

>     " A.     He  --  I think he said something about his
>     Shoulder"

It is also a euphemism when Toms says Mr. Kimbro "went to the ground". Toms physically attacked Mr. Kimbro and threw him to the wooden floor. Toms' is also liberal with the truth when he states that Mr. Kimbro was fighting him, when he was actually pinned to the floor and was attempting only to pull his arm down to relive the excruciating pain in his shoulder, and then admits "he did what he had to do"; this was the further assault of Mr. Kimbro, trying to asphyxiate him, with Tom's body weight and Sergeant Allbright's on Mr. Kimbro, who his wife explained had a heart condition. Toms "Did what he had to do" which is ignore the legal treatment of a disabled man, and his Constitutional rights, and subject him to tortures intended to kill him or with the possibility that he would be killed, which the officer was fully aware of. They placed their knees on Mr. Kimbro's back and neck depriving him of air until he passed out. Disregarding the fact that he knew of Mr. Kimbro's numerous medical conditions, Eric Toms **"DID WHAT HE HAD TO DO."**

28. During this time, they also without warning or Police order, pepper sprayed Mr. Kimbro twice, after he was handcuffed, as the Officers readily admit. The first exposure was with a Cone applicator which sprays a mist, it was sprayed 6 inches in front of Mr. Kimbro's face, an improper use as defined by the manufacturer of the device. Then after Mr. Kimbro was subdued and handcuffed, and unconscious from lack of air they (Allbright and Toms) pried Mr. Kimbro's pepper sprayed eyes open by digging in his lower eyelids with their fingernails until they were cut and bleeding, and then applied another round of pepper spray directly into his eyes with a Stream device. Was this another case of Officer Toms "DOING WHAT HE HAD TO DO." On belief this was "Street Justice" by dirty cops who wanted to exact punishment on Mr. Kimbro for his, to them completely unacceptable, attempt to stop them from killing him. Mr. Kimbro, believing that Officer Eric Toms and Sergeant Marcus Allbright were in the process of killing him, using excessive force, and having deliberately ignored all health issues as explained

by Mrs. Kimbro and shouted by Mr. Kimbro, as he was tortured, was justified in his response

under Tennessee law § 39-11-611.

> **(c)** Any person using force intended or likely to cause death or serious bodily injury within a residence, business, dwelling or vehicle is presumed to have held a reasonable belief of imminent death or serious bodily injury to self, family, a member of the household or a person visiting as an invited guest, when that force is used against another person, who unlawfully and forcibly enters or has unlawfully and forcibly entered the residence, business, dwelling or vehicle, and the person using defensive force knew or had reason to believe that an unlawful and forcible entry occurred.

> **(e)** The threat or use of force against another is not justified:

> **(3)** To resist a halt at a roadblock, arrest, search, or stop and frisk that the person using force knows is being made by a law enforcement officer, unless:

> > **(A)** The law enforcement officer uses or attempts to use greater force than necessary to make the arrest, search, stop and frisk, or halt; and

> > **(B)** The person using force reasonably believes that the force is immediately necessary to protect against the law enforcement officer's use or attempted use of greater force than necessary.

30. After arresting the entire Kimbro family, the cops then did an illegal search of the house,

discovering the Kimbro's gun collection in an upstairs bedroom. This was a gun collection all

legally obtained and registered. Cathey Kimbro had taken the rifle from Jeffrey in the kitchen

area of the home and walked to the rear bedroom of the home and placed it on the bed. It is

ridiculous to claim that this crippled woman walked up 14 stairs to place this gun on the bed,

while her son was being held downstairs with police guns focused on his chest. In fact, the

Officers concocted a story about a second gun being involved at this point (again, the

Defendants confuse chronological events as described here), and in Jeffrey Kimbro's

possession. In their false story and their invention of evidence, Mrs. Kimbro took the rifle to a

back bedroom on the first floor and then took the pistol up to the second floor and placed it in

the open on the bed there. This illogical device is the legal basis they devised for their search of the second floor. It is pure invention and patently false. Mrs. Kimbro was hysterical in her actions to protect Jeffrey from harm, as even the officer state. The officers had to have retrieved the gun from this location. As their police reports state, they don't have a clue as to who had what gun or even who put the gun away. Cathey Kimbro stepped between Jeff Kimbro, who was like a deer in the headlights as Officer Evola testified, and the officers, and took the one and only rifle or "gun" and placed it in the back bedroom on the same first floor and then returned immediately to the living room. The police reports are filled with these lies. The coconspirators then illegally searched the entire house, including the upstairs, and viewed the gun collection. Upon belief they searched this house looking for **anything illegal** they could use to convict the Kimbros of another crime, but this law abiding family had nothing illegal. This left these "dirty cops" no alternative but to invent evidence. They knew by this point, having placed Mr. Kimbro in an ambulance, that their illegal actions would be disclosed. At this time they made the decision to falsify evidence, claiming Jeffrey G. Kimbro had the pistol in his waistband. On belief the co-conspirators then met, and discussed at the house, to invent these falsehoods to cover their illegal activities, as they repeated these false stories in their police written reports the succeeding day. By this time, other Spring Hill Police Officers were on the scene. It cannot be determined whether they participated in the cover-up or what their contribution to it was. On belief, it was necessary to falsify the evidence and provide an excuse for them to be upstairs so that they could go to the prosecutor and request that the guns be seized. There is no mention of a gun collection in any Police Report, as even they were aware that this had nothing to do with the alleged "crimes" they intended to report. The prosecutor then dutifully asked the Judge to confiscate all the weapons. On belief, it was their intention to seize this gun collection from the very beginning, to exact further street justice upon the

Case 3:11-cv-00049 Document 1 Filed 01/13/11 Page 12 of 22 PageID #: 12

Kimbros. On belief, these guns are routinely sold to Police Officers at substantial discount, providing their anticipation of financial gain for themselves or the department. It wasn't enough to just torture and almost kill Mr. Kimbro, they were out for revenge, for the Kimbros standing up for their rights under Tennessee law. Upon belief, they also wanted to examine the guns to determine if they had been illegally obtained, which could not be done that night and even they knew they couldn't invent a story to seize them that night. Their efforts were thwarted when they subsequently found that all these guns had been **legally owned** by the Kimbros and all were **legally registered**. On belief, it will be found that these officers or the Police Departments checked on the registration of these guns while in their possession. This did not stop their intentional acts to have the gun collection legally stolen by the Prosecution. The guns were not part of the incident and they were only stored in the second story bedroom of Jeffrey G. Kimbro in locked cabinets.

31. On belief, they settled upon this conspiracy that night, (PredicateAct 2) and then compounded their illegal actions by **filing false police reports** (claiming Jeffrey G. Kimbro had the same pistol from the beginning of the incident at the front door, tucked into his waistband) that night and the next day, (PredicateAct 3). Since they had seen the pistol from the earlier incident, they decided to lie about Jeffrey Kimbro having it in his waistband to cover-up an illegal search and provide legal cover for same so that their subsequent testimony to the District Attorney about the gun collection would not disclose their illegal activity. In their arrogance, as Police officers in Williamson County, knowing the corruption of the legal system, these uneducated unaware officers were not intelligent enough, or knew they didn't have to draft Police Reports that were consistent in their details, that were logical, that correctly placed events and people in their correct timelines and correct physical positions and that correctly quoted individuals. Taking into consideration their levels of education (the language is

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 13 of 22 PageID #: 13

indicative of the Officer's levels of education ) they invented statements that were never made by any of the Kimbros).  But these Officers knew they could **rely** on a system where 300,000 Police Reports were filed in the prior 5 years  and the City of Franklin claims that not one false report was filed.   David Rahinsky Chief of Operations  for the Franklin Police Department answered interrogatories stated under Oath in Mr. Kimbro's Federal Civil Suit as follows:

> 17. Have you ever had an officer file a false police report? How many times has this happened in the last five years? How many police reports have been filed in total in the last five years?
>
> **RESPONSE:** In response to subpart 1 of Interrogatory No. 17, to this Defendant's knowledge, a police officer with the City of Franklin has never filed a false police report. Subpart 2 of Interrogatory No. 17 is therefore not applicable. The defendant objects to subpart 3 of Interrogatory No. 17. on the basis that it is overly broad and unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving the foregoing objection, there have been approximately **300,000** calls for service within the past five years with the City of Franklin Police Department.

This arrogance is astonishing and their statement is incredulous.  What this proves is that there is no credible review, or a review at all, of Police Reports and their officers know this.  If they had found even one false report out of 300,000 maybe you could believe there was a review process.  Are we to believe that the Franklin and Spring Hill Police Departments, accepting Officers with GEDs,  are PERFECT in their application of the law?  These officers know that the full force of the State will be brought to bear on their reports, that there is no review of anything they choose to write, that their illegal acts will be ignored, and the average citizen will be forced to take whatever plea bargain is offered to minimize their exposure.  This level of corruption is incredulous.  These coconspirators knew that their statements would not be reviewed.  The prosecutor's office is not an arm of justice, they are cronies of the local police departments.  These District Attorneys are empowered by Tennessee law to investigate, to hire independent investigators, and to prosecute crimes in Tennessee.  There is no provision in their

duties, under TN § 8-7-103, allowing them to overlook crimes committed by Police Officers, or to use their office to protect the local city and county offices from civil lawsuits, that have merit.

32. The Police Reports represent a conspiracy by these officers to falsely convict and imprison Mr. Kimbro and his family, and to convince the court that the attacks on Mr. Kimbro and his family were in self-defense and justified, and to explain the excessive force they used on Mr. Kimbro. Further, the Officer's actions in refusing reasonable Plea arrangements is to threaten the family with prison time in a malicious harassment and illustrates a continuing pattern of conspiracy within the District Attorney's Office. The District Attorney is fully aware that the Williamson County courts are a safe haven to himself and the City and County departments; they could not risk the level playing field of the Federal Courts.

33. Following the arrests, the Kimbros were brought before Judge Easter in a preliminary hearing. This may or may not be "THE" Preliminary Hearing, as the justice system may call it. At this time, Assistant District Attorney White offered James V. & Jeffrey G. Kimbro a plea bargain of a sentence of four years to run concurrently; the Kimbros having been charged a count for every Police Officer in the room. It should be pointed out that this is approximately the average sentence for this crime per the ***Sentencing Practices in Tennessee*** (mean = 50.2 months), ***Administrative Office of the Courts***, (the Standard Deviation is 16.7 months) For National information, ***The National Judicial Reporting Program of the Department of Justice*** shows Mean and Median felony sentence lengths in State Courts, in 2006., a mean Probation sentence of 40 months and a median sentence of 36 months. Allowing that Tennessee routinely imposes harsher sentences, a Standard Offender with no history of crime or violence who indeed was a college student at the time, there is a clear indication for a Probation Sentence of less than 48.0 months, with mitigating factors in abundance, and

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 15 of 22 PageID #: 15

aggravating factors noticeably minimal or absent. It is important to note that this Preliminary

Hearing took place before Mr. Kimbro filed his Federal Civil Lawsuit. On belief, the Police

Officers at this point and the Prosecution believed they had gotten away with their illegal

actions.

34. On January 17, 2008 James V. Kimbro filed a Federal civil lawsuit (Case # 3:08-CV-00079)

against Officer Eric Toms, individually, and in his official capacity, Officer J. Smith individually,

and in his official capacity, Officer Alley Evola individually, and in his/her official capacity,

Officer Bob Kupczyk, individually, and in his official capacity, Officer Marcus Allbright,

individually, and in his official capacity, John Does, CITY OF FRANKLIN, CITY OF SPRING HILL,

COUNTY OF WILLIAMSON, TN, COUNTY OF MAURY, TN (later dismissed), and WILLIAMSON

COUNTY SHERIFF'S DEPARTMENT.

35. The criminal case proceeded through the legal system and with numerous delays a court

date was finally set in April 2010. As this date approached, attorney for Jeffrey G. Kimbro , Mr.

Dana McClendon entered into discussions with Assistant District Attorney Derrick Smith, who

in the interim had been assigned the case. A plea agreement was being discussed, in which

both were aware the main concern was to spare Jeffrey any jail time. Jeffrey Kimbro was a

college student at the time of the incident and Mr. McClendon had been instructed to do

anything to not only avoid jail time but to clear Jeffrey's record so that this affair would not

ruin the rest of his life On belief, this was communicated to Mr. Smith by Mr. McClendon

either directly or indirectly. Jeffrey Kimbro was told by Attorney McClendon that Derrick Smith

had stated "that he did not care whether Jeffrey was guilty or not". His intentions were thus

made clear.

36. On belief, in the interim, the Prosecutor, Mr. Derrick Smith entered into a conspiracy with

Ms. Lisa M. Carson, Mr. Mark Nolan, Ms. Kathryn W. Olita, Ms. Kristen Berexa, attorneys for

Franklin Police Department, Spring Hill Police Department, Williamson County Jail, and Williamson County Sherriff's Department, as well as the five Police Officers, to threaten Mr. James V. Kimbro into dismissing his Federal Civil lawsuit, (Predicate Act 4). Their method was to threaten his son Jeffrey, with an extended jail sentence, indicated by the now proffered Plea Bargain sentence of 10 years. Not knowing the extent of the conspiracy or how far into the Williamson County legal system the conspiracy reached, Mr. Kimbro would be forced to dismiss the lawsuit, against all parties. (Predicate Act 4) It is important to note here that Mr. Smith actively sought the dismissal of the suit against all parties, even against the jail and Williamson County which were not parties to the criminal proceedings, to protect Williamson County, and to thwart valid charges of denial of Constitutional rights, against it. This showed his true purpose and proves the object of his threats against Jeffrey Kimbro. His unlawful conspiracy with the Defendant Attorneys and their clients to determine and set criminal sentences was to extort the dismissal of a federal civil proceeding.

37. Mr. Kimbro agreed to a Plea Bargain under the full belief that the Prosecutor was threatening his son with the threat of pursuing a 10 year prison sentence. Mr. Kimbro had no idea of the extent of the conspiracy, and having been threatened by a Prosecutor, just to get his employer out of responsibility in the civil lawsuit, he knew he could not trust this case to go before a judge in Williamson County. Mr. Kimbro agreed to dismiss his lawsuit against the five Police Officers and the City of Spring Hill and the City of Franklin. A court date of 11/02/09 was set.

38. The Kimbro family appeared in court on 11/02/09. Mr. James Kimbro was immediately confronted with a Plea Bargain that called for the dismissal of his entire Federal Civil Suit. He had not agreed to this. He did not agree to the dismissal of the suit against the Williamson County Jail and Williamson County. Mr. Kimbro immediately informed his attorney that this

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 17 of 22 PageID #: 17

was unacceptable. Susan Logan, his attorney, informed the prosecution. He also asked if he was then free to leave, as he intended to go.

39. Mr. Kimbro then stood at the rear of the courtroom, on the left side, just outside the Attorney/Client meeting room. As he stood there the Prosecutor, who obviously did not recognize him, gathered the defendant attorneys and was ushering them into the Attorney/Client meeting room when Mr. Kimbro heard him say "the old man is a hardass" and then they conspired to get to their real intention, which all along was the dismissal of the lawsuit, (Predicate Act 5). The Defendant Attorneys had no lawful purpose in this discussion, and no lawful purpose in determining Mr. or Mrs. Kimbro's sentence. The Prosecutor had used and was using his office, the power of the State, and threats to extend prison terms, if there ultimately was a guilty verdict, to protect Williamson County, his employer, from financial loss in a valid lawsuit with merit. This constitutes the solicitation of a bribe and extortion under the Hobbs Act, 18 U.S.C. 1951. The conspiracy's true intention was divulged when they came out of their meeting and "sweetened" the plea bargain by offering to drop any requests for jail or prison time for Mr. And Mrs. Kimbro in return for a full dismissal of all Defendants in the Federal Civil suit (Case # 3:08-CV-00079). The judge conveniently agreed to this, raising further concerns of how high this conspiracy could reach. Mr. Kimbro immediately recognized the intent of the conspiracy, but had no alternative but to accede with the power of the state being wielded against him and with no resources to fight a crooked system. This was not an admission of guilt, but an extorted plea.

40. In the interim, James V. Kimbro, told Mr. Dana McClendon that he intended to sue him for his actions in defending Jeffrey Kimbro, with his complete surrender to the prosecution after earlier promising a vigorous defense. Earlier he had required payment of $3,000 cash, when he had agreed from the beginning to offset his fees against the gun collection being held. On

belief, he was made aware that the Prosecutor intended the theft of the Kimbro gun collection. In court, Mr. McClendon then said he was resigning from the case and would not represent Jeffrey Kimbro further. Mr. James V. Kimbro, now facing no representation of Jeffrey Kimbro, and the threats of the Prosecutor against his son, was extorted into accepting a Plea Agreement conceding guilt when he and his family were not guilty of any crime. The conspiracy of the officers, the defendant Attorneys and their clients, and the Prosecution forced Mr. Kimbro to acquiesce and protect his son.

41. On belief, the criminal Association in Fact has sought to protect their conspiracy by their extortion of a sentence far out of the mainstream and beyond comparison for Jeffrey G. Kimbro. They imposed a ten year sentence, which is outside 99.8% of sentences for this offence, as a control on the Kimbro family, seeking to deny them access to the courts. This Obstruction of Justice is their Predicate Act 6. On belief, this 10 year sentence, keeping the threat of their violating Jeffrey G. Kimbro and sending him to prison, was the last act of the conspiracy. The Kimbros are kept in line by the conspiracy, not knowing when an officer will attempt to violate Jeffrey G. Kimbro by the further invention of evidence or intentional provocation. They are fully aware that their actions will not deter James Kimbro, they must apply their threat to his family. Intimidation was attempted by the Spring Hill Police Department, by following the Kimbros and intimidating their extended family with a false Domestic Disturbance call, the Kimbros will need, and ask for by motion, Federal protection from this conspiracy. Having been victims of this conspiracy, the Kimbros believe their reach may be beyond the Police Departments listed as Defendants, and that the conspiracy may launch further illegal activity using Police contacts in other jurisdictions.

Case 3:11-cv-00049 Document 1 Filed 01/13/11 Page 19 of 22 PageID #: 19

# Prayers for Relief

42. Paragraphs 1-41 are respectfully alleged and reincorporated throughout this entire

Complaint.

Defendant's pattern of crimes included violent assaults, Obstruction of Justice, Constitutional Violations, extortion, solicitation of bribery, and conspiracy committed for the purpose of obtaining control over the tangible and intangible property of James V., Cathey P. and Jeffrey G. Kimbro by unlawfully bringing to bear the full force of the State of Tennessee. These crimes have but one purpose: to deny the Kimbros access to the courts

Plaintiffs demand judgment and other relief as follows:

A.  Valuation by this Court of the cash value of Federal Case # 3:08-CV-00079, unlawfully dismissed in this conspiracy, between one and three million dollars ($1,000,000-$3,000,000) and judgment against the Defendants both individually and severally in an amount equal to three times the damage caused by their racketeering activity.

B.  Judgment in an amount equal to three times the damage caused by the Defendant's racketeering activity in the extortion of the Kimbro gun collection.  Plaintiffs ask the court for determination of the value of the collection at between $15,000 and $25,000.

C.  Preliminary and permanent injunctions enjoining Mr. Derrrick Smith from any further racketeering activity or any further association with the Williamson County District Attorney's Office or acting in a public prosecutorial position within the United States.

D.  Preliminary and permanent injunctions enjoining the City of Franklin Police Department and the City of Spring Hill Police Department from any further racketeering activity and that they be directed to establish civilian Boards of Review to review and certify as truthful and accurate all Police Reports and take proper actions against all Officers who knowingly file false Police Reports.

E.  That the City of Franklin Police Department and the City of Spring Hill Police Department be directed to establish an independent civilian Board of Review to investigate all complaints against their respective departments, and have the power to suspend and dismiss all officers they determine violated Police procedures and/or the law.

F.  That pending disposition of this court action, the City of Franklin, Williamson County, and the Franklin Police Department be preliminarily enjoined from the further disposal of any of

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 20 of 22 PageID #: 20

the Kimbro gun collection, and that they furnish this court with a list of weapons remaining in their possession, a listing of all persons acquiring any of the weapons to include the purchase price and identification of any persons as Police Officers of the City of Franklin or the Williamson Sheriff's Department.

G. Preliminary and permanent injunctions enjoining the Williamson County Jail and the Williamson County Sheriff's Department from any further racketeering activity and that they be directed to establish a civilian Board of Review to investigate prisoner complaints, staff complaints, and to conduct annual audits of the jail facilities for Constitutional violations.

H. Preliminary and permanent injunctions enjoining the Williamson County Jail and the Williamson County Sheriff's Department from any further racketeering activity and that they be directed to establish, under the direction of the Federal Court, an independent Board of Review to interview every prisoner released by the jail as a condition of release to investigate prisoner treatment, jail medical conditions, and staff application of constitutional rights.

I.  Appropriate attorney's fees and costs, pursuant to 18 U.S.C. § 1964;

J.  Trial by jury, pursuant to Fed. R. Civ. P. 38;

K.  Claimant further requests an award granting such other and further relief as the Court finds just and proper.

Case 3:11-cv-00049   Document 1   Filed 01/13/11   Page 21 of 22 PageID #: 21

## JURY DEMAND

Plaintiffs demand a trial by jury on all causes of action so triable.

James V. Kimbro
1529 Macaw Ct.
Brentwood, TN 37027
(615) 530-2506

Date: 1/13/2011

Cathey P. Kimbro

Jeffrey G. Kimbro