IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JAMES V. KIMBRO, CATHEY P. )
KIMBRO, AND JEFFREY G. KIMBRO )
)
    Plaintiffs, )
)
v. ) No. 3:11-cv-00049
) JUDGE HAYNES
OFFICER ERIC TOMS, et al., )
)
    Defendants. )
)

MEMORANDUM

Plaintiffs, James V. Kimbro, Cathey P. Kimbro and Jeffrey G. Kimbro, filed this pro se action under the Racketeer Influenced and Corrupt Organization Act, ("RICO"), 18 U.S.C. § 1964(c), against the Defendants: Officer Eric Toms, Officer J. Smith, Officer Alley Evola, Officer Bob Kupczyk, Officer Marcus Allbright, City of Franklin Police Department, City of Spring Hill Police Department, Williamson County Jail, Williamson County Sheriff's Department, Derrick Smith, Lisa Carson, Mark Nolan, Kathyrn Olita and Kristin Berexa. The Defendants are alleged to be an "association in fact." The police officer Defendants are named in their individual and official capacities. Plaintiffs allege that Defendants formed a conspiracy to commit "a deliberate campaign of widespread fraud and deception to cover up repeated acts of excessive force" and to use their positions to force James Kimbro to dismiss his legal action against most of the Defendants.

Before the Court are the following motions to dismiss:

Defendants Williamson County and Williamson County Sheriff's Department Motion to Dismiss (Docket Entry No. 60)

> Defendants Mark Nolan and Kathyrn Olita's Motion to Dismiss (Docket Entry No. 62)
> Defendant Kristin Berexa's Motion to Dismiss (Docket Entry No. 63)
> Defendants Eric Toms, J. Smith, Marcus Albright and Spring Hill Police Department's Motion to Dismiss (Docket Entry No. 65)
> Defendant Lisa Carson's Motion to Dismiss (Docket Entry No. 67)
> Defendants Bob Kupczyk and Franklin Police Department's Motion to Dismiss (Docket Entry No. 70)
> Defendant Derrick Smith's Motion to Dismiss (Docket Entry No. 108)
> Defendant Alley Evola's Motion to Dismiss (Docket Entry No. 120)

In sum, these Defendants argue that Plaintiffs' complaint fails to state a claim for which relief can be granted.

In their responses, (Docket Entry Nos. 102-107, 113, 146), Plaintiffs assert that their only claims are under RICO, rendering some of the Defendants' arguments irrelevant. Plaintiffs also contend that their complaint provides sufficient facts to state a RICO claim and that discovery will supplement their claims to detail the alleged conspiracy.

For the reasons set forth below, the Court concludes that Plaintiffs have failed to allege facts of "a pattern of racketeering" or predicate acts under RICO that are necessary for their RICO claims. The Court also concludes that Plaintiffs fail to satisfy the "enterprise" requirement for a RICO action under Section 1962(c). Thus, the Court concludes that the Defendants' motions to dismiss should be granted.

### 1. Analysis of the Amended Complaint[1]

According to Plaintiffs' amended complaint, on January 17, 2007, Defendants Toms and Smith of the Spring Hill Police Department and Defendants Evola and Kupczyk of the Franklin Police Department arrived at Plaintiffs' home in Thompson Station, Tennessee to serve Jeffrey G. Kimbro with a misdemeanor warrant for telephone harassment. (Docket Entry No. 22,

---

[1] Plaintiffs' "'amended complaint supercedes the original complaint.'" Klyce v. Ramirez, 852 F.2d 568, 1988 WL 74155, at *3 (6th Cir. July 18, 1988) (quoting Frutz v. Standard Sec. Life Ins. Co., 676 F.2d 1356, 1358 (11th Cir. 1982)).

Amended Complaint, at ¶ 20). Plaintiffs allege that the police officers did not announce their presence and Plaintiffs, fearing a home invasion, armed themselves. Id. Plaintiffs allege that they put away their weapons after determining that the persons knocking on the door were police officers. Id. Before entering Plaintiffs' residence, Defendant Toms contacted his superior Defendant Allbright of the Spring Hill Police Department about Plaintiffs' weapons and Allbright went to Plaintiffs' residence. Id. at ¶ 22.

Defendant Toms ordered Cathey Kimbro to step outside onto the porch, but she refused because she was dressed in her pajamas. Id. at ¶ 25. Defendant Toms then allegedly "grabbed her without warning physically and pulled her into the door frame." Id. Cathey Kimbro was subsequently charged with resisting arrest and obstruction of justice. Id. Plaintiffs describe "the first conspiracy" as when the officers had "lost patience with Mrs. Kimbro . . . and decided to attack Mr. Kimbro whenever he approached the front door (Predicate Act 1)." Id. at ¶ 26.

Plaintiffs allege that both Jeffrey and James Kimbro were unaware that police officers had entered their home, and when James Kimbro entered the room, Toms forced him to the ground. Id. at ¶ 28. James Kimbro, who is diabetic, suffers from vascular dementia and a heart condition. Id. at ¶ 24. When Defendant Toms did so, James Kimbro stated "Shoot them, Shoot them," to his family. Id. at ¶ 28. According to Plaintiffs, James Kimbro was handcuffed and then pepper sprayed when he was already unconscious from a lack of air due to Defendants' pressure to his neck and back. Id. Plaintiffs assert James Kimbro was pepper sprayed twice, once by holding the nozzle of the pepper spray only inches from his face and then by digging their fingernails into his eyelids to open his eyes. Id.

The officers arrested the entire Kimbro family and searched the house, that resulted in the discovery of Plaintiffs' gun collection in an upstairs bedroom. Id. at ¶ 30. Plaintiffs apparently

3

allege that the police intended to use this evidence to "convict the Kimbros of another crime." Id. The officers seized the gun collection. Id. at ¶ 30. Plaintiffs allege that "these guns are routinely sold to Police Officers at substantial discount, providing their anticipation of financial gain for themselves or the department." Id. Plaintiffs allege the weapons were legal, registered and were not used in the confrontation with the Defendants. Id.

Plaintiffs next allege "on belief" the police officer Defendants conspired to compound their illegal actions "by **filing false police reports** claiming Jeffrey G. Kimbro had the same pistol from the beginning of the incident at the front door, tucked into his waistband, that night and the next day, (Predicate Act 3)." Id. at ¶ 31 (emphasis in original). Plaintiffs' complaint refers to an earlier confrontation between James Kimbro and officers that same day in which James Kimbro had a pistol. Id.

After their arrests, Plaintiffs had a preliminary hearing. Id. at ¶ 33. Plaintiffs allege that "Assistant District Attorney White offered James V. [and] Jeffery G. Kimbro a plea bargain of a sentence of four years to run concurrently; the Kimbros having been charged a count for every Police Officer in the room." Id. at ¶ 33. On January 17, 2008, James Kimbro filed a civil action in this district, (Case No. 3:08-cv-00179), against Defendants Toms, Smith, Evola, Kupczyk, Allbright, City of Franklin, City of Spring Hill, Williamson County, Maury County and the Williamson County Sheriff's Department. Id. at ¶ 34.

As the trial date in that action approached, Plaintiffs' original counsel discussed a potential plea bargain with Defendant Assistant District Attorney Smith that Plaintiffs characterize as a conspiracy to "threaten James V. Kimbro into dismissing his Federal Civil lawsuit, (Predicate Act 4)." In Plaintiffs' view, the proffered plea bargain threatened their son Jeffrey with a ten year sentence. Id. at ¶ 36. Because Defendant Smith allegedly sought the

4

dismissal of the civil action, Plaintiffs contend a conspiracy arose to extort the Plaintiffs into dismissing their civil action. Id.

According to the complaint, James Kimbro initially agreed to dismiss his first action against the five police officer defendants and the cities of Spring Hill and Franklin. Id. at ¶ 37. Yet, on November 2, 2009, James Kimbro alleges that he was "confronted" with a plea bargain that required dismissal of his entire civil action, contrary to his prior agreement to dismiss the individual defendants, but not Williamson County Jail and Williamson County. Id. at ¶ 38. James Kimbro informed his attorney that this deal was unacceptable. Id. According to Plaintiffs, Defendant Smith "gathered the defendant attorneys and . . . usher[ed] them into the Attorney/Client meeting room . . . [where] they conspired to get their real intention, which all along was the dismissal of the lawsuit, (Predicate Act 5)." Id. at ¶ 39. Plaintiffs cite the presence of the Defendants Carson, Berexa, Nolan and Olita as proof that Defendant Smith was conspiring with these Defendants to use the plea bargain to get Plaintiffs to dismiss their civil action against the officers. Id. After this meeting, Plaintiffs were offered a plea bargain without incarceration for James and Cathey Kimbro in exchange for James Kimbro's dismissal of his action. Id. at ¶ 39. James Kimbro accepted the plea offer, but asserts that he was coerced to do so to avoid incarceration. Id. at ¶ 39.

Jeffrey Kimbro, however, was sentenced to ten years' probation that Plaintiffs describe as the last act of the conspiracy and "Predicate Act 6." Id. at ¶ 41. Plaintiffs allege that this probation sentence is an attempt to control or silence Plaintiffs into the future. Id.

In sum, Plaintiffs' allege as the illegal acts of the various conspiracies as follows:

Assault on Mrs. Cathey Kimbro
Aggravated assault on Mr. James V. Kimbro
Obstruction of Justice on James V., Cathey P. and Jeffrey G. Kimbro
    Filing False Police Reports in violation of 18 U.S.C. § 1001

>> Fabricating evidence concerning Jeffery G. Kimbro's pistol
>> Illegal search and seizure
>
> Substantive Due Process violations of the Kimbro family
> Conspirators intimidation on January 22, 2007 when a false domestic disturbance call was made at the Kimbro residence
> Conspiracy to violate the Constitutional Rights of James V. and Jeffrey G. Kimbro under 18 U.S.C. § 241 – Sec. 241. Conspiracy against rights
> Perjury at the Preliminary Hearing by Officer Evola and Officer Eric Toms
> Conspiracy to cover up criminal activity to dismiss Case No. 3:08-cv-00179 by Defendants and their agent. Attorney Kirsten Berexa
> Conspiracy to extort the dismissal of Case No. 3:08-cv-00179, and to extort the Kimbro personal property by Defendants and their agent, Attorney Kristen Berexa.

(Docket Entry No. 107, Plaintiffs' Response to Defendants City of Franklin Police Department and Kupczyk's Motion to Dismiss, at 6)

### 2. Conclusions of Law

As an initial matter, in each of their responses to Defendants' motions, Plaintiffs state "although Plaintiffs believe they have properly plead, should this Court decide that defendants are correct, Plaintiffs MOVE this Honorable Court for a chance to amend their pleading . . ." See (Docket Entry No. 102, at 4). Such a request is an impermissible motion to amend. Begala v. PNC Bank, Ohio, N.A, 214 F.3d 776, 784 (6th Cir. 2000) ("What plaintiffs may have stated, almost as an aside to the district court in a memorandum in opposition to the defendant's motion to dismiss is also not a motion to amend…*Plaintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies* of the complaint and then an opportunity to cure those deficiencies.") (emphasis in original.)

As to the merits of the Defendants' motions to dismiss, in Ashcroft v. Iqbal, 129 S.Ct. 1937 (2009), the Supreme Court restated the requirements to evaluate a motion to dismiss under Fed. R. Civ. P. 12(b)(6):

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As

6

the Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the pleading standard **Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.** Id., at 555 (citing Papasan v. Allain, 478 U.S. 265, 286, (1986)). **A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do."** 550 U.S., at 555. **Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement."** Id., at 557.

**To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Id., at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.** Id., at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Ibid. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " Id., at 557 (brackets omitted).

**Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id., at 555, . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.** Id., at 556. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. 490 F.3d, at 157-158. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1949-1950 (emphasis added).

To be sure, "allegations of a complaint drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers in the sense that a pro se complaint

7

will be liberally construed in determining whether it fails to state a claim upon which relief could be granted." Jourdon v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991) citing Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). Although pro se litigants are held "less stringent standards than formal pleadings drafted by lawyers," Haines, 404 U.S. at 520-21, pro se litigants must nonetheless satisfy the basic pleading requirements. Foster v. City of Cleveland Heights, 81 F.3d 160, 1996 WL 132181, at * 2 (6th Cir. 1996) (citations omitted). Here Plaintiffs limit their claim to a civil RICO claim and clearly disavow any other federal or state law claims.[2]

Under RICO, as a matter of law, the municipal defendants Franklin Police Department, Spring Hill Police Department, Williamson County Jail, and Williamson County Sheriff's Department[3] cannot form the requisite intent to commit a RICO violation. Call v. Watts, 142 F.3d 432, 1998 WL 165131, at * 2 (6th Cir. 1998); see also United States v. Thompson, 669 F.2d 1143, 1148 (6th Cir. 1982); McGee v. City of Warrensville Heights, 16 F. Supp. 2d 837, 848 (N.D. Ohio 1998); County of Oakland by Kuhn v. City of Detroit, 784 F. Supp. 1275, 1283 (E.D. Mich. 1992). In a word, a successful RICO claim "cannot be maintained against a municipal corporation." Gentry v. Resolution Trust Corp., 937 F.2d 899, 911-914 (3d Cir. 1991). Thus, the Defendants Franklin Police Department, Spring Hill Police Department, Williamson County Jail, and Williamson County Sheriff's Department should be dismissed as parties.

As to the individual Defendants, a RICO claim must allege that these Defendants engaged in conduct of an enterprise through a pattern of racketeering activity. Sedima, S.P.R.I.

---

[2] See (Docket Entry No. 102, at p. 7); (Docket Entry No. 103, at p. 6-7); Docket Entry No. 104, at p. 5); (Docket Entry No. 105, at p. 6); (Docket Entry No. 106, at p. 6); (Docket Entry No. 107, at p. 6); (Docket Entry No. 113, at 6-7); (Docket Entry No. 146, at 5).

[3] Defendants note that the proper Defendants would be the City of Franklin and City of Spring Hill rather than their respective police departments.

8

Case 3:11-cv-00049   Document 176   Filed 09/19/11   Page 8 of 12 PageID #: 1137

v. Imrex Co., Inc., 473 U.S. 479, 496 (1985). The Sixth Circuit has outlined the elements of a private RICO claim:

> Pursuant to 18 U.S.C. § 1964(c), "[a]ny person injured in his business or property by reason of a violation of § 1962" may bring a private action. Section 1962 makes it unlawful for any person to: (1) use income derived from a "pattern of racketeering activity," to acquire interest in or establish operation of any enterprise engaged in, or the activities of which affect, interstate commerce; (2) through a pattern of racketeering activity, acquire or maintain an interest in or control of any enterprise engaged in, or the activities of which affect, interstate commerce; (3) through a pattern of racketeering activity, conduct or participate in the conduct of an enterprise engaged in, or the activities of which affect, interstate commerce; or (4) conspire to violate any provision of Section 1962.

Riverview Health Inst. LLC v. Med. Mut. Of Ohio, 601 F.3d 505, 513 (6th Cir. 2010).

The RICO statute limits the predicate acts that constitute "racketeering activity." See 18 U.S.C. § 1961(1). For predicate acts, Plaintiffs must allege more than conclusory allegations. Peterson v. Shansk, 149 F.3d 1140, 1145 (10th Cir.1998) ("averments are insufficient to state a claim on which relief can be based"). Moreover, for fraud claims, Plaintiffs must plead such claims with factual particularity. Fed. R. Civ. P. 9(b). Moreover, conspiracy claims require specific facts. Twombley, 550 U.S. at 565 fn. 10; Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839 (6th Cir. 1984).

As to the elements of a RICO claim, a "pattern of racketeering activity" requires at least two acts of racketeering activity . . . the last of which occurred within ten years . . . after the commission of a prior act of racketeering activity." 18 U.S.C. § 1962 (5). The Sixth Circuit describes the assessment of the predicate acts necessary for a pattern of racketeering activity:

> Therefore, to state the inquiry simply, a pattern is the sum of various factors including: the length of time the racketeering activity existed; the number of different schemes (the more the better); the number of predicate acts within each scheme (the more the better); the variety of species of predicate acts (the more the better); the distinct types of injury (the more the better); the number of victims (the more the better); and the number of perpetrators (the less the better). Therefore, at one extreme is a perpetrator committing two predicate acts, in one

9

day, in one scheme, causing a single injury, to a single victim. This is not a pattern. At the other extreme, a perpetrator engineering dozens of schemes, and using myriad predicate acts to further each scheme, against numerous victims causing numerous types of injuries, beyond peradventure engages in a pattern of racketeering activity.

Columbia Natural Resources, Inc. v. Tatum, 58 F.3d 1101, 1110 (6th Cir. 1995) (internal citations omitted).

Here, Plaintiffs' complaint alleges six predicate acts: (1) the officers' "attack [of] Mr. Kimbro whenever he approached the front door," (Docket Entry No. 22, Amended Complaint, at ¶ 26); (2) the Defendants' arrest of Plaintiffs, Id. at ¶ 31; (3) by filing false police reports, Id.; (4) Defendants' threats to "James V. Kimbro into dismissing his Federal Civil lawsuit," Id. at ¶ 36; (5) a conspiracy to make a plea offer for James Kimbro to dismiss his civil action after Kimbro's refusal to dismiss all parties in the original suit on November 2, 2009 and (6) when "the criminal Association in fact sought to protect their conspiracy by their extortion of a sentence far out of the mainstream" for Jeffery Kimbro. Id. at ¶ 41. Plaintiffs allege the sixth predicate act was obstruction of justice intended to keep the Kimbros "in line" and "deny them access to the courts." Id.

In their complaint, Plaintiffs refer to several of the predicate acts enumerated in 18 U.S.C. § 1961(1). Id. at ¶ 41; (Docket Entry No. 107, Plaintiffs' Response to Defendants City of Franklin Police Department and Kupczyk's Motion to Dismiss, at p. 6). Yet, the predicate acts listed are inapplicable to the factual allegations in their complaint. See 18 U.S.C.A. § 1503 (prohibiting the influencing or injuring an officer or juror); 18 U.S.C.A. 1510 (prohibiting obstruction of criminal investigations); 18 U.S.C.A. 1513 (prohibiting retaliation against a witness, victim, or informant); 18 U.S.C 1952 (relating to racketeering).

10

Case 3:11-cv-00049   Document 176   Filed 09/19/11   Page 10 of 12 PageID #: 1139

To be sure, Plaintiffs' complaint also alleges "widespread fraud and deception" in the commission of the alleged conspiracy. (Docket Entry No. 22, Amended Complaint, at p. 4). In their responses to Defendants' motions, Plaintiffs make vague accusations that "the conspirators committed mail and wire fraud in their scheme, following the court date, with phone calls and billings to the other conspirators by the attorneys." See (Docket Entry No. 103, Plaintiffs Response to Defendants Nolan and Olita's Motion to Dismiss, at p. 6). The Court deems the complaint's allegations as failing to meet the Federal Rules of Civil Procedure's requirements that averments of fraud be pled with particularity as well as Iqbal's plausibility requirements. Fed. R. Civ. P. 9(b); Morgan, 829 F.2d at 12; Iqbal, 129 S.Ct. at 1949-1950.

Plaintiffs also alleged as predicate acts that the Defendants' "crimes included violent assault . . . extortion, solicitation of bribery, and conspiracy committed for the purpose of obtaining control over the tangible and intangible property" of the Plaintiffs. (Docket Entry No. 22, Amended Complaint, at ¶ 42). Assault is a not predicate act. 18 U.S.C. § 1961(1). Plaintiffs' complaint lacks any factual allegation of solicitation of a bribe. Plaintiffs allege Defendants' conduct violates the Hobbs Act, that relates to interference with commerce by threats or violence. (Docket Entry No. 22 Amended Complaint at ¶ 39); See 18 U.S.C § 1951. Plaintiffs also do not plead any facts to demonstrate Defendants' purported interest in their tangible and intangible property.

The only predicate offense alleged is extortion, a felony under Tennessee law, Tenn. Code. Ann. §§ 39-14-112 and 40-35-112, that qualifies as a RICO predicate act. 18 U.S.C. § 1961(1)(A). Plaintiffs alleged extortion to force Plaintiffs to drop their federal action against the Defendants and their employers in exchange for their freedom. (Docket Entry No. 22, Amended Complaint, at ¶ 36). In sum, Plaintiffs' complaint identified only two possible predicate acts, but

11

under Tatum, two such acts fail to establish a pattern of racketeering activity. Tatum, 58 F.3d at 1110. The Court concludes that these allegations do not satisfy the pattern of racketeering required for a RICO claim.

The Court also concludes that Plaintiffs fail to satisfy the enterprise requirement for a RICO claim that requires the "person" and "enterprise" as a "continuing unit." 18 U.S.C. 1962(c); Puckett v. Tennessee Eastman Co., 889 F.2d 1481 (6th Cir. 1989). "To satisfy the enterprise requirement, an association-in-fact must be an ongoing organization, its members must function as a continuing unit, and it must be separate from the pattern of racketeering activity in which it engages." Frank v. D'Ambrosi, 4 F.3d 1378, 1386 (6th Cir. 1993) (citing United States v. Turkette, 452 U.S. 576, 583 (1981)). Plaintiffs do not allege any facts that suggest that these individual Defendants act as a continuing unit as required for their RICO claims.

For the reasons set forth above, the Court concludes that Plaintiffs' complaint fails to state a claim for relief under RICO. Thus, the Defendants' motions to dismiss should be granted.

An appropriate Order is filed herewith.

ENTERED this the 16th day of September, 2011.

WILLIAM J. HAYNES, JR.
United States District Judge